CASE 33—PETITION ORDINARY—JANUARY 2.

# Grubb vs. McCoy, &c.

### APPEAL FROM JEFFERSON CIRCUIT COURT.

1. The law prescribes but one mode in which a tenant or under tenant may discharge the levy of a distress warrant upon his property; and that is by executing the bond provided for by section 721 of the Civil Code.

2. The levy of a distress warrant upon the property of under tenants was valid and regular, and the property liable for the rent due from the tenant. They executed bond to the effect that if the property should be adjudged subject to the distress warrant, they would pay to the plaintiff the value thereof and ten per cent, &c., and the property was returned to them. *Held*—That the execution of the bond was unauthorized, could not be enforced by motion, and did not operate to discharge the levy; and the officer might peaceably retake possession of and sell the property, although the warrant had been returned and was not in his hands at the time of the recapture.

Speed and Barret, for appellant, cited 2 *Bibb*, 404; 5 *Litt.*, 42.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

Dent and Pomeroy sued out a distress warrant for three hundred dollars, due by Thomerson, their tenant. Grubb, a constable of Jefferson county, levied the warrant upon five horses belonging to McCoy and Robinson, who were the under tenants of Thomerson, and were in possession of the leased premises at the time the rent fell due, and at the time of the levy.

After the levy had been made, McCoy and Robinson, with Lindsay as their surety, executed a bond to the plaintiffs in the warrant, in which, after reciting that " they claimed said horses as their property, and demanded a suspension of the sale of the same," it is stipulated that " if it shall be adjudged that

said property, or either of said horses, is subject to said distress warrant, we will pay to the said plaintiffs in the said distress warrant the value of the horse or horses so subjected, and ten per cent. thereon," &c. Upon the execution of this bond, the horses were returned to the owners.

The plaintiffs in the distress warrant moved the court for a judgment on this bond, pursuant to the provisions of section 716 of the Civil Code; but the court very properly, as we think, refused to render judgment against the obligors, and dismissed the motion, upon the ground that the bond, as taken, was unauthorized by law, and could not be enforced as a statutory obligation, in a proceeding by motion.

Thereupon, Grubb, the constable, immediately retook possession peaceably of the horses, under and by virtue of his original levy, and McCoy and Robinson instituted this action against him, claiming that they were entitled to the possession of the horses, and that the taking of them by the defendant was without authority and was unlawful.

The defendant relied for his defense upon the facts which have been stated.

The law and facts having been submitted to the court below, judgment was rendered in favor of the plaintiffs for the horses, and the defendant has appealed.

It cannot be doubted upon the facts appearing in the record, that the original levy of the distress warrant was valid and regular, and that the property levied on was liable for the amount of the rent due from Thomerson to his landlords. It was therefore the right, as well as the duty of the officer, to effectuate the levy which he had thus regularly made, by taking possession of the horses and making sale of them in the manner prescribed by law, unless the execution of the bond by the appellees operated to discharge the levy, and to divest the officer of his legal rights under it.

The law provides but one mode in which a tenant or undertenant may discharge the levy of a distress warrant upon his property. And that is, by executing " with one or more sufficient sureties to be approved by the officer, a bond to the effect that he will pay to such party the amount of the rent specified

in the warrant, with ten per cent. thereon, if the property is of the value of the rent so specified; or, if it is of less value, that he will pay to such party the value thereof, and ten per cent. thereon." (*Civil Code, sec.* 721.)

In the same section it is provided that " upon the giving of the bond, *the levy,* if one is made, *shall be discharged,* and the bond and warrant shall be returned to some justice of the peace of the county, where the amount claimed does not exceed fifty dollars; and where it does exceed that sum, to the clerk's office of the circuit court of the county."

The appellees failed to execute the bond here provided for, and consequently there was no discharge of the levy according to the terms of this section.

And it is entirely clear that the bond which was executed by them could not have operated to discharge the levy for these obvious reasons:

By section 713 the sale of personal property upon which an execution is levied shall be *suspended* at the instance of any person, other than the defendant in the execution, claiming the property, who shall execute a bond to the plaintiff in the execution to the effect that "if it shall be adjudged that the property, or any part of it, is subject to execution, he will pay to the plaintiff the value of the property so subject," &c.

Section 718 provides that the giving of this bond "*shall. not discharge the levy of the execution* upon the property claimed." But the officer may leave it, subject to the lien of the levy, with the person in whose possession it was found pending the proceeding on the bond; and may, in the meantime, proceed with the execution against any other property of the defendant.

These provisions are made to apply "to proceedings upon distress warrants, levied or about to be levied upon personal property claimed by any person *other* than the tenant, his assignee, or *under tenant.*" (*Sec.* 720.)

It is therefore manifest that the appellees, under a misapprehension, doubtless, of their legal rights, executed a bond which is intended and expressly provided for a different class of claimants, and which the officer had no legal authority to accept. The bond as a statutory obligation was ineffectual,

Grubb vs. McCoy, &c.

and did not operate either to discharge the levy or to divest the constable of his right to the possession of the property levied on. And even if the appellees had occupied the position of such claimants as were authorized to give the bond, still the effect of its execution would have been merely a suspension of the sale, and not a discharge of the levy, as the statutes referred to explicitly declare.

Inasmuch, then, as the levy remained in full force, unaffected by the execution and acceptance of this unauthorized bond, and as the officer had improperly surrendered the possession of the horses to the appellees, he had a right, in a peaceable manner, to regain his lawful possession, and in doing so he violated no right of the appellees. They had failed to comply with the terms upon which alone they could have entitled themselves to be restored to the possession. The officer had, in virtue of the levy, acquired a qualified right of property in the horses, and to that right of property the right of possession was necessarily incident.

The fact that the distress warrant had been returned, and was not in the hands of the officer at the time of the recapture, is wholly immaterial. The facts stated in the official return of the constable show that the warrant was improperly returned, and that his authority to effectuate the levy had not been impaired by anything that had occurred since the levy.

In the case of *Ferguson, &c., vs. Williams, &c.,* (3 *B. Mon.,* 304,) it was held that the writ of replevin was not an abrogation of the levy, but that the levy remained in full force, although the slaves had been taken out of the possession of the sheriff, and restored to the possession of the claimant; and that upon the rendition of the judgment of restitution the sheriff had the unquestionable right, and it was his duty, to receive the slaves and to make sale thereof, though the execution which had been levied upon them had been returned, and no *venditioni exponas* was in his hands; that this latter writ was intended only to compel the sheriff to do his duty, by making sale of property levied on which he might do without it, even after the termination of his office.

The judgment is therefore reversed, and the cause remanded for a new trial and for further proceedings not inconsistent with the principles of this opinion.